Calhoun Realty Company v. Commissioner.
Calhoun Realty Co. v. Commissioner
Docket No. 7057.
United States Tax Court
1946 Tax Ct. Memo LEXIS 125; 5 T.C.M. (CCH) 676; T.C.M. (RIA) 46188; July 29, 1946
*125 Fair market value of land and buildings which petitioner acquired in 1936 from bondholders who had acquired the property shortly prior thereto at foreclosure sale determined from the evidence. The parties are agreed that all remaining issues in the case can be determined under Rule 50, once this issue is determined, such issues being the amount of the depreciation allowable on the buildings and the gain or loss on the sale of the property made in 1943. Davis Haskin, Esq., 705 Olive St., St. Louis, Mo., for the petitioner. Felix Atwood, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The taxes in controversy in this proceeding are income and declared value excess-profits taxes for the calendar years 1941 and 1942 and the taxable period January 1, 1943 to June 28, 1943, as follows: Declared Value
Excess-Profits
Year
Income Tax
Tax
1941
$ 486.07
None
1942
578.67
$ 90.69
Jan. 1 to June 28,
1943
15,424.39
8,144.08
$16,489.13
$8,234.77
The deficiencies result from several adjustments made by the Commissioner in the income tax returns of petitioner filed for the respective taxable years in question. *126 The parties are now agreed as to some of the issues raised by the assignments of error and all remaining issues will be resolved by the Court's finding as to the fair market value on June 5, 1936 of certain real estate owned by petitioner and sold by it in 1943. The parties are agreed that once the Court finds what that fair market value was, then all remaining issues will be settled under Rule 50, such issues being the amount of depreciation allowance in each of the taxable years to which petitioner is entitled and the gain or loss on the sale of the property made in 1943. A first and second stipulation of facts have been filed and also the oral testimony of two witnesses was received at the hearing. Findings of Fact We adopt the facts as stipulated as part of our findings of fact, except the assessed value of the property following the year 1939 and continuing on through 1943. Objection was sustained at the hearing to these latter assessed values as being irrelevant and immaterial. The following resume is based upon the facts as stipulated: The petitioner is a corporation organized under the laws of the State of Tennessee with an office at 718 Locust Street, St. Louis 1, *127 Missouri. On June 28, 1943, the petitioner filed a notice of voluntary dissolution with the Secretary of State of Tennessee. The Federal income tax returns for the years here involved were filed with the Collector of Internal Revenue for the First District of Missouri. The petitioner's books were kept and its returns made and filed on the basis of cash receipts and disbursements. In 1925 William Wilson and his wife executed 310 "First Mortgage 6% Real Estate Gold Notes" of the principal amount of $500 each and gave as security therefor their mortgage on certain properties located in Memphis, Tennessee and known as 137 East Calhoun Avenue and 138 St. Paul Street. The mortgage was in the amount of $155,000 and Federal Commerce Trust Company, located in St. Louis, Missouri, was trustee. In 1933 when the outstanding and unpaid notes aggregated $105,000 there were defaults in the payment of the principal of a portion of such notes and in the payment of interest on all such notes. In December 1933 and in the year 1934 holders of notes aggregating $101,000 appointed Mercantile-Commerce Bank and Trust Company, located in St. Louis, Missouri, as successor trustee and requested it to proceed *128 forthwith to institute foreclosure proceedings and also authorized such bank to purchase the mortgaged property at any foreclosure sale. Foreclosure suit was duly instituted by Mercantile-Commerce Bank and Trust Company in April 1934, but pursuant to agreement such proceedings were held in abeyance until 1936. On May 19, 1936, the mortgaged property was sold by a Special Master appointed by the District Court of the United States for the Western District of Tennessee and, by making only one bid of $45,000, such property was bid in by the nominee of Mercantile-Commerce Bank and Trust Company acting on behalf of the depositing noteholders. Such sale was confirmed by the court on June 5, 1936. Calhoun Realty Company was formed on June 28, 1936, with an authorized capital stock of 210 shares of no par value. At the time of organization the petitioner paid a total of $288.33 for incorporation fees and other organization expenses. In July 1936, the Memphis property which had been acquired at the above-mentioned foreclosure sale was conveyed to the petitioner and 203 of the petitioner's shares were issued to holders of the Wilson notes, 202 of which went to depositing noteholders and *129 one of which went to another noteholder who elected to receive such share of stock instead of $181.18 which Mercantile-Commerce Bank and Trust Company paid to each of the seven other non-depositing noteholders. The amount the court ordered to be paid to each of the non-depositing noteholders was $181.18 and represented each noteholder's pro rata share in the $45,000 foreclosure sales price after deduction of foreclosure expenses. In its income tax return for the period ended December 31, 1936, the petitioner claimed no deduction for depreciation with respect to the properties involved. For the years 1937 through 1940 the petitioner deducted depreciation with respect to the properties involved in the amount of $13,447.20. For the years 1941 and 1942 and the period from January 1, 1943 to June 28, 1943, the petitioner claimed depreciation deductions with respect to the properties involved in the aggregate amount of $8,404.50. Part of these latter claimed deductions for depreciation have been disallowed by the Commissioner in his determination of the deficiencies. The remaining life of the buildings when acquired by the petitioner in 1936 was 33 1/3 years; the remaining life of the *130 buildings on January 1, 1941 was 29 years. On June 23, 1943, the petitioner sold the Memphis property for a gross sales price of $100,000. The petitioner paid commissions of $5,000 with respect to such sale. The petitioner carried on no business after June 28, 1943. The petitioner was formally dissolved on June 28, 1943. The petitioner's last Federal income tax return was for the period January 1, 1943 to June 28. 1943. The petitioner filed a capital stock tax return for the capital stock tax fiscal year ended June 30, 1942. On such return the petitioner declared a capital stock value of $30,000. The petitioner filed no capital stock tax return for the capital stock tax fiscal year ended June 30, 1943. For the months of August through December 1936, the petitioner received rental income from the Memphis properties in the amount of $1,428.95. For the years 1937 through 1942 the petitioner received rental income from such properties as follows: 1937
$ 5,914
1938
8,700
1939
9,000
1940
9,000
1941
9,900
1942
11,400 For the period from January 1, 1943 until the petitioner sold the Memphis properties involved the petitioner received rental income in the *131 amount of $5,733.34. For the years 1936 through 1939 the valuation placed upon the Memphis properties in question by the City of Memphis for the purpose of taxation was $90,525. For the years 1936, 1937 and 1938 the valuation placed upon the Memphis properties in question by the County of Shelby was $90,550. The following findings are made from the oral testimony in the case: The property known as 137 Calhoun Avenue was a five-story and basement building covering a lot on the south side of Calhoun Avenue between Main and Second Streets. Such lot and building had a Calhoun Avenue frontage of 48 feet and a depth of 170 feet. The building was of solid brick construction with framework inside. It was constructed some time between 1905 and 1910. The property known as 138 St. Paul Street was a three-story and basement building on a lot on the north side of St. Paul Street, across an alley and immediately to the south of the Calhoun Avenue property. The St. Paul Street building was similar in construction to the Calhoun Avenue building, that is, of warehouse construction and was built a short time before the Calhoun Avenue building was erected. The St. Paul Street lot was 106feet X *132 170feet with the 106feet fronting on St. Paul Street. The building was 100feet X 170feet. Thus the square footage of the Calhoun Avenue building was 48,960 (6 X 48feet X 170feet) and the St. Paul Street building 68,000 (4 X 100feet X 170feet). On the entire west side of the combined property was a railroad siding making it possible to load and unload directly to and from as many as eight railroad cars at a time. The petitioner's property was very conveniently located within a block of Main Street, the main street of Memphis, within two blocks of the Illinois Central Railroad Company freight depot and the American Express Company depot, within three blocks of the Rock Island (Chicago, Rock Island & Pacific Railway Company) freight depot, and the Frisco (St. Louis-San Francisco Railway Company) freight depot, and almost adjoined the Nashville, Chattanooga & St. Louis Railway freight depot and the Louisville & Nashville Railroad Company freight depot. It was half a block from Union Station and about half a block from Central Station. It was about a mile from the heart of the Memphis business section. The June 5, 1936 fair market value of the petitioner's Memphis property was $100,000 *133 allocated as follows: Calhoun Avenue building
$ 37,020
Calhoun Avenue land
7,260
St. Paul Street building
47,710
St. Paul Street land
8,010
$100,000
Opinion BLACK, Judge: The respondent conceded at the hearing and also concedes in his brief that petitioner is entitled to a deduction of $288.33 in computing its 1943 net income due to the fact that petitioner paid organization expenses in that amount in 1936 and dissolved on June 28, 1943. The respondent also concedes that petitioner should be allowed a credit in computing its 1943 income for declared value excess profits tax purpose by reason of the fact that petitioner declared a capital stock value of $30,000 for the capital stock fiscal year ended June 30, 1942. This leaves as the sole remaining issue in the case the question: What was the June 1936 fair market value of the warehouse property located on Calhoun Avenue and St. Paul Street in Memphis, Tennessee? After the above issue is determined the parties are agreed that the remaining issues can be determined under Rule 50, such issues being the amount of the depreciation allowable on the buildings and the gain or loss on the sale of the property *134 made in 1943. The respondent contends that the fair market value of the property in question was $52,500 on the basic date allocated as follows: land $8,018.30, to the buildings, $44,481.70. The petitioner contends that the fair market value of the property on the basic date was $132,260 allocated $20,200 to land and $112,060 to buildings. We have found from a consideration of the evidence that the fair market value of the property on the basic date was $100,000 allocated $15,270 to land and $84,730 to buildings. The petitioner in its brief quotes the usual and accepted definition of fair market value as follows: * * * This [fair market value] may be defined to be the value of the property in money as between one who wishes to purchase and one who wishes to sell; the price at which a seller willing to sell at a fair price, and a buyer willing to buy at a fair price, both having reasonable knowledge of the facts. Phillips v. United States, (DC WD Pa., 1926) 12 Fed. (2d) 598, 601. In arriving at the figures which we have fixed as the fair market value of the property on the basic date we have endeavored to keep in mind the foregoing definition of fair market value *135 and give it application under the facts and circumstances of the case. The petitioner introduced the testimony of two reputable and experienced real estate brokers who lived in the City of Memphis, Tennessee, where the property was located and who were on a committee of three who appraised the property in question in 1937 as of June 5, 1936, for the Memphis Real Estate Board. The Memphis Real Estate Board was having the appraisal made on behalf of petitioner who desired it for pruposes of depreciation deductions and other purposes. Each of these witnesses testified that the property had a fair market value of $132,600 on the basic date and gave his reasons in support of the valuation made in the appraisal. The other member of the committee of three who made the appraisal in 1937 is now dead. In addition to the testimony of these two witnesses there are other facts in the record which bear upon the question of valuation such as the gross rental income of the property; its assessed value both by the City of Memphis and the County of Shelby; the desirable location of the property; the surplus of warehouse property in the City of Memphis on the basic date; the fact that the warehouses *136 had been constructed a good many years prior to the basic date and were to some extent at least obsolete as warehouse construction now goes. All of these factors, along with the testimony of the two expert witnesses, we have carefully considered in arriving at the fair market value of the property on June 5, 1936. The value of $100,000 allocated between the land and buildings as we have specified in our findings of fact should be used in a computation under Rule 50. Decision will be entered under Rule 50.